FILED
U. S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

APR 29 2019

JAMES W. McCORMACK, CLERK
By: DEP CLERK

**UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF ARKANSAS**

**SARAH PIERCE** **PLAINTIFF**

**V.** **CASE NO.** 4:19-cv-306-SWW

**IDEAL IMAGE** **DEFENDANTS**
**PORTFOLIO RECOVERY ASSOCIATES, LLC**

**COMPLAINT**

Comes now the Plaintiff, Sarah Pierce (hereinafter "Pierce"), by and through her attorneys, Leigh Law, PLLC, and for her Complaint against Defendants Ideal Image and Portfolio Recovery Associates, LLC (hereinafter, collectively, "Defendants").

**INTRODUCTION**

Plaintiff brings this Complaint seeking statutory, actual, and punitive damages, as well as attorney's fees and costs, for violations of the *Fair Debt Collection Practices Act* (hereafter "FDCPA") *15 U.S.C. §1692 et seq.*, *Arkansas Fair Debt Collection Practices Act* (hereafter "AFDCPA") *17-24-101 et seq.*, *Arkansas Deceptive Trade Practices Act* (hereafter "ADTPA") *A.C.A. §4-88-101 through §4-88-115*, the *Fair Credit Reporting Act 15 U.S.C. §1681 et seq.* common law fraud, Promissory Estoppel, and breach of contract.

**JURISDICTION AND VENUE**

1. Jurisdiction in conferred on this Court pursuant to *15 U.S.C. §1692k(d); A.C.A. §17-24-512(d); A.C.A. §4-88-113(f); 15 U.S.C. §1681p; and 28 U.S.C. §1331.*

This case assigned to District Judge Wright
and to Magistrate Judge Kearney

2. Venue is proper as all alleged conduct took place while the Plaintiff was residing in Little Rock, Arkansas.

## PARTIES

3. Pierce is an individual, natural person, and a consumer, residing in Little Rock, Arkansas; and was an "individual", "natural person", and a "consumer" at all times as alleged in this Complaint.[1]

4. Ideal Image, its principal place of business located at 11525 Cantrell Rd. Little Rock, AR 72212.

5. Portfolio Recovery Associate (hereafter "PRA") is a "debt collector", in so far as debt collector is defined pursuant to *15 U.S.C. §1692a(6)* and *A.C.A. §17-24-502(5)(A)*,[2] a "person" as defined pursuant to the *A.C.A. §4-88-102(5)*[3], and a furnisher of information to consumer credit reporting agencies.

## RELEVANT PRECEDENT AND STATUTORY STRUCTURE OF THE FDCPA AND THE AFDCPA

6. Pierce incorporates by reference and re-alleges all preceding paragraphs.

7. "The purpose of the FDCPA is to `eliminate abusive debt collection practices by debt collectors,' ... and debt collectors are liable for failure to comply with `any provision' of the

---

[1] Pursuant to *15 U.S.C. §1692(a) (3) & A.C.A. §17-24-502(2),* a "consumer" means any natural person obligated or allegedly obligated to pay any debt. Pursuant to *15 U.S.C. §1681a(c)*, a consumer means an individual; pursuant to *15 U.S.C. §1681a(b)* the term "person" means an individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity.

[2] A "debt collector" is any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. *15 U.S.C. §1692a (6) & A.C.A. §17-24-502(5)(A).*

[3] *A.C.A. §4-88-102(5)* defines a person as, an individual, organization, group, association, partnership, *corporation*, or any combination of them.

Act." *Richmond v. Higgins,* 435 F.3d 825, 828 (8th Cir.2006) (quoting *15 U.S.C. §§1692(e), 1692k(a)*) (internal citations omitted).

8. Whether conduct violates the FDCPA is to be determined by analyzing the conduct from the perspective of the least sophisticated consumer. *Freyermuth v. Credit Bureau Servs., Inc.*, 248 F.3d 767, 771 (8th Cir. 2001) (quoting, *Duffy v. Landberg,* 215 F.3d 871, 873 (8th Cir. 2000).

9. A debt collector who misrepresents the character, amount, or legal status of any debt violates the FDCPA. *15 U.S.C. §1692e (2) (A) & A.C.A. §17-24-506(a).*

10. Debt collectors may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt [emphasis added] & *A.C.A. §17-24-506(a).*

11. A debt collector is not allowed to use any unfair or unconscionable means in the connection with the collection of any debt. *15 U.S.C. §1692f & A.C.A. §17-24-507(a).*

12. Reporting to a credit reporting agency [credit bureau] is a communication under the FDCPA. See, *Edeh v. Midland Credit Mgmt., Inc* WL 3893604 (D. Minn. Sept 29, 2010) ("The court has learned through its work on countless FDCPA cases that threatening to report and reporting debts to CRAs is one of the most commonly-used arrows in the debt collector's quiver")).[4]

13. The FDCPA also contains a specific provision applicable to debt collectors when they communicate with a CRA as it relates to a disputed debt, which states:

> "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section – "Communicating or threatening to communicate to any person credit information

[4] See also, See also, *Rivera v. Bank One,* 145 F.R.D. 614 (D. P.R. 1993); accord *Blanks v. Ford Motor Credit*, 2005 WL 43981, at *3 (N.D. Tex. Jan. 7, 2005) (communicating information to credit reporting agency is a communication in connection with collection of the debt); *Akalwadi v. Risk Mgmt. Alternatives, Inc.*, 336 F. Supp. 2d 492, 503 n.4 (D. Md. 2004) (reporting debt is "in connection with" debt collection); *Sullivan v. Equifax,* 2002 WL 799856, 2002 U.S. Dist. LEXIS 7884, at *15 (E.D. Pa. Apr. 19, 2002) (reporting a debt is a powerful collection tool); *Ditty v. CheckRite, Ltd.,* 973 F. Supp. 1320, 1331 (D. Utah 1997) (reporting bad check information to others is designed to give collector additional leverage over debtor); In re *Sommersdorf,* 139 B.R. 700, 701 (Bankr. S.D. Ohio 1991).

which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." *15 U.S.C. §1692e(8).*

14. The bona fide error defense is limited to clerical errors. *Picht v. Jon R. Hawks, Ltd.,* 236 F.3d 446, 451 (8th Cir. 2001).

15. The FDCPA's bona fide error defense does not shield a debt collector from liability when it relies on information from the creditor. *Owen v. LC. System, Inc.,* 629 F.3d 1263 (11th Cir. 2011).

## STATUTORY STRUCTURE OF THE ADTPA[5]

16. Pierce incorporates by reference and re-alleges all preceding paragraphs.

17. Engaging in any unconscionable, false or deceptive act or practice in business, commerce or trade violates the ADTPA. *A.C.A. §4-88-107(a).*[6]

## STATUTORY STRUCTURE OF THE FCRA

18. Pierce incorporates by reference and re-alleges all preceding paragraphs.

19. The FCRA imposes on the furnishers of information ("furnishers") to a credit reporting agency the obligation to report only accurate information. *15 U.S.C. §1681s-2(a)(1).*

20. Furnishers must investigate[7] the information that they have previously reported if a consumer disputes the accuracy or completeness of that information with the CRA. *15 U.S.C. §1681i.*

---

[5] A private right of action under the ADTPA lies in *§4-88-113.*

[6] The Arkansas Supreme Court has interpreted this language as a broad catch-all provision that encompasses conduct defined as deceptive under other substantive areas of law. *See*, e.g., *Bryant*, 336 Ark. at 295-97, 985 S.W.2d at 302-03.

[7] "By its ordinary meaning, an "investigation" requires an inquiry likely to turn up information about the underlying facts and positions of the parties, not a cursory or sloppy review of the dispute." See, Gorman v. Wolpoff & Abramson, LLP, 584 F. 3d 1147 (9th Cir. 2009); see also, See also, *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir.2005) ("Whether a defendant's investigation [pursuant to *§1681s-2(b) (1)(A)*] is reasonable is a factual question normally reserved for trial.")

21. Furnishers who fail to fulfill its obligations in the reinvestigation process becomes liable to the consumer under the FCRA for actual damages and attorney's fees for a negligent violation, plus additional statutory and punitive damages when the violation is willful. *15 U.S.C. §1681s-2(b), §1681n* (generally creating cause of action for willful noncompliance), *§1681o* (generally creating cause of action for negligent noncompliance).

**FACTS COMMON TO ALL COUNTS**

22. Pierce incorporates by reference and re-alleges all preceding paragraphs.

23. On or about April 16, 2016, Plaintiff consulted with Defendant and signed paperwork for laser hair removal treatment. *See Exhibit 1 attached and incorporated herein.*

24. Per the contract, the total cost for the treatment was $1,274.00

25. Through the laser hair removal office, Plaintiff opened a revolving credit account with Comenity Capital Bank (hereafter "Comenity") for a loan for the hair removal treatment.

26. Plaintiff underwent three treatments on the following dates *See Exhibit 2 attached and incorporated herein*:

a. April 16, 2016;

b. June 4, 2016; and

c. July 23, 2016.

27. On or about April 29, 2016, Plaintiff received a welcome email from Comenity.

28. The Plaintiff made the following payments to Comenity:

a. May 25, 2016 $51.00 payment;

b. June 30, 2016 $75.00 payment;

c. August 12, 2016 $50.00 payment; and

d.   August 31, 2016 $100.00 payment

29.     On or about September 1, 2016, Plaintiff was charged $2,910.60 by Comenity.

30.     On or about December 20, 2016 Plaintiff made a payment of $647.00 to community.

31.     Plaintiff contacted Comenity by phone and email about her account and charges for services rendered that she had never received nor agreed to from Ideal Image.

32.     On or about February 10, 2017, March 2, 2017, March 31, 2017, and May 5, 2017, Plaintiff made payments to Comenity of $137.00, $142.00, $128.00, and $122.00.

33.     On or about July 1, 2017 and August 1, 2017, Plaintiff attempted to contact Comenity.

34.     On or about October 19, 2017, Plaintiff received an email from Comenity requesting her to pay $665.00.

35.     On or about November 18, 2017, Plaintiff received an email from Comenity requesting her to pay $805.00.

36.     On or about January 22, 2018, Plaintiff received an email from Comenity stating that her account had been closed.

37.     In late December 2018, Plaintiff received a letter from PRA dated December 20, 2018 stating that she owed $3,605.96 to Ideal Image/Comenity Capital Bank. *See Exhibit 3 attached and incorporated herein.*

38.     Ideal Image without permission or knowledge of Plaintiff charged for laser hair removal treatments for her legs that were not provided nor agreed to.

39.     The charges on the Commity card are fraudulent and not the responsibility of Plaintiff.

40. Portfolio Recovery Associates filed suit on April 1, 2019 in the District Court of Faulkner County Arkansas. *See Exhibit 4 attached and incorporated herein.*

41. Plaintiff has incurred emotional damages.

**COUNT I: BREACH OF CONTRACT**

42. Plaintiff incorporates by reference and re-alleges the preceding paragraphs.

43. The essential elements of a contract under Arkansas law include (1) competent parties, (2) subject matter, (3) legal consideration, (4) agreement, and (5) mutual obligations.[8]

44. In this case the parties are competent; there is clear subject matter [an alleged debt]; legal consideration tendered by Ideal Image; a mutual agreement that was clear, unambiguous, and in writing, and mutual obligations.

45. Plaintiff met all of her obligations under the contract, and Ideal Image failed to perform its part of the mutual agreement that was agreed to in writing.

46. Plaintiff incurred damages as a result of the breach by Ideal Image.

**COUNT II: COMMON LAW FRAUD**

47. Plaintiff incorporates by reference and re-alleges all preceding paragraphs.

48. Under Arkansas law, fraud requires: (1) a false representation of material fact; (2) knowledge that the representation is false or that there is insufficient evidence upon which to make the representation; (3) intent to induce action or inaction in reliance upon the representation; (4) justifiable reliance on the representation; and (5) damage suffered as a result of the reliance. *Goforth v. Smith*, 991 S.W.2d 579, 586 (Ark. 1999). Fraud also extends to concealment of material information and nondisclosure of certain pertinent information. *Farm Bureau Policy Holders & Members v. Farm Bureau Mut. Ins. Co. of Ark., Inc.*, 984 S.W.2d 6, 14 (Ark. 1998).

---

[8] *Daimler-Chrysler Corp. v. Smelser*, 375 Ark. 216, 289 S.W.3d 466 (2008)

49. Pierce made a good faith effort to settle this clearly disputed debt, by making numerous efforts to contact Comenity about the debt.

50. Defendants made false representations about the debt.

51. PRA by sending its collection letter(s) was to induce action on the part of Pierce, which did in fact work.

52. Payments were made for services never rendered by Ideal Image, Pierce had a justifiable reliance that the matter with Comenity was closed.

53. Pierce has suffered damages due to Defendants' fraud, specifically, emotional distress[9] and damage to her credit report.

**COUNT III: PROMISSORY ESTOPPEL**

54. Pierce incorporates by reference and re-alleges the preceding paragraphs.

55. Under Arkansas law, promissory estoppel requires that the plaintiff show four elements: (1) the making of a promise, (2) intent by the promisor that the promise be relied upon, the reliance upon the promise by the promisee, and (4) injustice resulting from a refusal to enforce the promise.[10]

56. For the same allegations pled previously, Ideal Image guilty of Promissory Estoppel.

---

[9] "Actual damages include damages for personal humiliation, embarrassment, mental anguish and emotional distress. There is no fixed standard or measure in the case of intangible items such as humiliation, embarrassment, mental anguish or emotional distress. Mental and emotional suffering and distress pass under various names such as fright or grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry and nausea. The law does not set a definite standard by which to calculate compensation for mental and emotional summering and distress. Neither is there any requirement that any witness express an opinion about the amount of compensation that is appropriate for the kind of law." *McCollough v. Johnson, Rodenburg & Lauinger, LLC,* ___ F.3d ____, 2011 WL 746892 (9th Cir. 2011). [It is noteworthy The Honorable Sandra Day O'Connor, Associate Justice of the United States Supreme Court (Ret.), was sitting by designation pursuant to 28 U.S.C. §294(a)].

[10] In re *Hilyard Drilling Co.,* 840 F.2d 596, 602 (8th Cir. 1988); see also *K.C. Props. Of N.W. Ark., Inc. v. Lowell Inv. Partners, LLC, 373 Ark. 14, 280 S.W. 3d 1, 14 (2008).*

## COUNT IV: VIOLATIONS OF THE FDCPA

57.     Pierce incorporates by reference and re-alleges all preceding paragraphs.

58.     PRA, as the assignee, breached their contract with Plaintiff is a violation of the FDCPA as it is an unfair action, in connection with the collection of a debt, against Pierce, therefore violating *15 U.S.C. §1692f.*[11]

59.     PRA made false and misleading statements to Pierce that she owes Defendants $3,605.96 This conduct by Defendants violates the FDCPA, specifically *15 U.S.C. §1692e.*

60.     Defendants' bill to Pierce for services rendered that she never received constitutes common law fraud and a per-se violation of the FDCPA because such fraudulent conduct is unconscionable, therefore again violating *15 U.S.C. §1692f.*

61.     Defendants' reporting to the credit reporting agencies that Plaintiff owes any sum of money to them is a false and misleading statement and therefore again violates *15 U.S.C. §1692e.*

62.     Defendants failed to conduct a reasonable investigation into Pierce's dispute, even when the dispute was sent by his attorney, violates the Fair Credit Reporting Act and therefore is a per-se violation of the FDCPA.

## COUNT V: VIOLATIONS OF THE AFDCPA

63.     Pierce incorporates by reference and re-alleges the preceding paragraphs.

64.     PRA, as the assignee, breached its contract with Pierce is a violation of the AFDCPA as it is an unfair action, in connection with the collection of a debt, against Pierce, therefore violating *A.C.A. §17-24-506(a).*

---

[11] "Statutory proscriptions using general terms such as unfairness are to be given effect by considering public values beyond simply those enshrined in the letter or encompassed in the spirit of the statute." See, *Federal Trade Commission v. Sperry & Hutchinson Co.*, 405 U.S. 233 S. Ct. (1972).

65. PRA made the false and misleading statement to Pierce that she owes $3,605.96 violates the AFDCPA, specifically *A.C.A. §17-24-507(a).*

66. Defendants committed common law fraud which is a per-se violation of the AFDCPA because such fraudulent conduct is unconscionable, therefore again violating *A.C.A. §17-24-506(a).*

67. Defendants communicating to the credit reporting agencies that Pierce owes any sum of money to PRA is a false and misleading statement and therefore again violates *A.C.A. §17-24-507(a).*

68. Defendants refused to conduct a reasonable investigation into Pierce's dispute. Such conduct violates the Fair Credit Reporting Act and therefore is a per-se violation of the AFDCPA.

**COUNT VI: VIOLATIONS OF THE FCRA**

69. Pierce incorporates by reference and re-alleges the preceding paragraphs.

70. Defendants violated the FCRA, specifically *§1681s-2(b) ii.*[12] As it is still reporting inaccurate information to Pierce's credit report; a reasonable person conducting a reasonable investigation could easily determine the terms of the agreement which Ideal Image and Pierce entered makes Pierce no longer liable to Defendants in any sum of money.

71. Defendants' violations of the FCRA are willful, reckless, and show contempt for their duties and under the Act and therefore subject themselves to punitive damages under the Act.[13]

---

[12] Holds, A person shall not furnish information relating to a consumer to any consumer reporting agency if the information, is in fact, inaccurate.

[13] The threat of punitive damages under the FCRA is the primary factor deterring erroneous reporting by the reporting industry. See, *Brim v. Midland Credit Mgmt. Inc.,* 795 F.Supp.2d 1255 (N.D. Ala. 2011).

## COUNT VII: VIOLATION OF THE ADTPA[14]

72.     Pierce incorporates by reference and re-alleges all preceding paragraphs.

73.     The Arkansas Deceptive Trade Practices Act, A.C.A. *§4-88-107(a)* contains a non-exhaustive list of conduct that violates the ADTPA that states in part:

> Deceptive and unconscionable trade practices made unlawful and prohibited by this chapter include, but are not limited to, the following: (10) Engaging in any other unconscionable, **false, or deceptive act** [emphasis added] or practice in business, commerce, or trade.[15]

74.     Defendants' false and deceptive reporting to Pierce credit reports make defendants guilty of violating the ADTPA.

75.     Defendants' violations of the FDCPA, AFDCPA, common law fraud and the FCRA are all *per se* violations of the ADTPA.

## DAMAGES AND PRAYER FOR RELIEF

76.     Pierce incorporates by reference and re-alleges all preceding paragraphs.

77.     As it relates to statutory damages under the FDCPA, the Act states, "any debt collector who fails to comply with any provision of the Act, with respect to any person, is liable to such person for statutory damages up to $1,000.00. *15 U.S.C. §1692k(a)(2).*

78.     Pierce prays for statutory damages pursuant to the FDCPA in the amount of $1,000.00.

---

[14] The Arkansas Supreme Court has recognized "the legislature's remedial purpose" in enacting the ADTPA and also that a "liberal construction of the [A]DTPA is appropriate." *Arkansas ex rel. Bryant v. R & A Inv. Co.,* 985 S.W.2d 299, 302 (Ark. 1999).

[15] A private right of action under the ADTPA lies in *§4-88-113.*

79.     As it relates to actual damages under the FDCPA, the Act states, "Any debt collector who fails to comply with any provision of the Act, with respect to any person, is liable to such person for actual damages." *15 U.S.C. §1692k(a)(1).*

80.     Pierce prays for the actual damages of the $1,452.00 she paid Comenity and for which Ideal Image failed to perform their duties under the contract and for the fraud committed, and for emotional distress in an amount determined by a jury.

81.     As it relates to statutory damages under the AFDCPA, the Act states, "Any debt collector who fails to comply with any provision of the Act, with respect to any person, is liable to such person for statutory damages up to $1,000.00." *A.C.A. §17-24-512(a)(1).*

82.     Pierce prays for statutory damages pursuant to the AFDCPA in the amount of $1,000.00.

83.     As it relates to actual damages under the AFDCPA, the Act states, "Any debt collector who fails to comply with any provision of the Act, with respect to any person, is liable to such person for actual damages. *A.C.A. §17-24-512(a)(1).*

84.     Pierce prays for the actual damages of $1,452.00 she paid Defendants and which Ideal Image failed to perform its duties under the contract and for the fraud committed, and for emotional distress in an amount determined by a jury.

85.     As it relates to damages under the FCRA, the Act states, "A consumer who demonstrates that a furnisher was negligent with respect to a consumer's disputed information is entitled to actual damages under FCRA *§1681o.*

86.     Pierce prays for an amount determined by the jury, for emotional distress under *§1681o.*

87.     *FCRA §1681n* states:

> Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000...such amount of punitive damages as the court may allow; and in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

88. Pierce's Complaint states a prima facie claim that defendants' violations of the FCRA are willful violations of the Act; therefore, Pierce prays for statutory damages[16] of $1,000.00 per willful[17] violation of the FCRA under *§1681* for every month PRA has been reporting in error to Pierce's reports.

89. Pierce prays for punitive damages, in an amount determined by a jury, under the FCRA for Defendants' numerous and willful violations of the Act.

90. As it relates to damages pursuant to the Arkansas Deceptive Trade Practices Act, Pierce prays for actual and punitive damages in an amount determined by a jury.

91. As it relates to damages under common law fraud, Pierce prays for punitive damages in an amount determined by a jury. See, *Ray Dodge, Inc. v. Moore, 251 Ark. 1036, 479 S.W.2d 518, 524 (1972)*(punitive damages are appropriate in cases of fraud).

92. As it relates to damages under promissory estoppel, Pierce prays for an Order from this Court directing Defendants to immediately comply with its promise made to Pierce and remove its negative reporting to Pierce's credit report.

---

[16] Statutory damages are in effect bounties—means of inducing private persons to enforce a regulatory law. See, *Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014).

[17] To act "willfully" is, for purposes of civil law, to engage in conduct that creates "an unjustifiably high risk of harm that is either known **or so obvious that it should be known**," *Farmer v. Brennan,* 511 U.S. 825, 836 (1994).

93. Pierce prays for any other damages proven at trial that would be just and proper pursuant to Promissory Estoppel.

94. Pierce prays for a reasonable attorney's fee as determined by the Court and for the costs in bringing this Complaint, pursuant to *15 U.S.C. §1692k(a)(3); A.C.A. §17-24-102(a)(2)(A); A.C.A. § 4-88-113(f); 15 U.S.C. §1681n(a)(3)* and *A.C.A. §16-22-308.*

95. Pierce prays for any other relief the Court deems just and proper.

**JURY TRIAL DEMAND**

96. Pierce incorporates by reference and re-alleges all previous paragraphs.

97. Pierce demands trial by jury.

Respectfully submitted,

Leigh Law PLLC
2800 Percy Machin Dr.
North Little Rock, AR 72114
501.227.7627 office
501.227.7628 fax

By: ______________________
Victoria Leigh, ABN 2011257

# LASER HAIR REMOVAL AGREEMENT

THIS LASER HAIR REMOVAL AGREEMENT ("Agreement")
between Ideal Image Group of Arkansas, PLLC , ("we, "us" and "our"),
with a business location at 11525 Cantrell Road Suite 103 Little Rock, AR 72212 ,
and Sarah Pierce ("you" and "your").

This Agreement is for the purchase of laser hair removal services, (the "LHR Services"). Subject to all the terms and conditions of this Agreement, both parties agree that:

1. We will perform LHR Services on the areas of your body (each, a "Service Area") as noted on the chart in Schedule C and D. The LHR Services will be provided to you at the address listed above. Upon the execution and receipt of the required paperwork, you may transfer to another operating Ideal Image location.

2. You shall pay for the LHR Services according to the plan(s) you choose in Schedule B.

If you choose the Standard package, EZ-Pay package or the 50/50 package, you agree to the following:

a. Service Sessions. The package for all Service Areas includes five (5) Service Sessions. The Sessions for all Service Areas must be scheduled at least eight (8) weeks apart and must be completed within twelve (12) months of the signing of this agreement. **YOU MUST COMPLETE THE FIRST FIVE (5) SERVICES OF THAT PACKAGE WITHIN TWELVE (12) MONTHS OF THE DATE THIS AGREEMENT IS SIGNED BY YOU. ANY OF THE FIRST FIVE (5) SERVICES NOT COMPLETED WITHIN THIS TWELVE (12) MONTH PERIOD WILL BE FORFEITED, AND NO REFUND WILL BE ISSUED.**

DS SP
**Your Initials**

b. Touch-up Sessions. The All Inclusive Package includes up to four (4) Touch-up Sessions at no additional charge, provided that you have complied with all terms of this Agreement. If you have not complied with the terms of this Agreement, the Touch-up Sessions will be considered forfeited. If Services are still requested after non-compliance with this Agreement, then additional charges at our then current rate will apply. One Touch-up Session may be used for all body areas every ten (10) weeks following the last regular Session and must be completed ten (10) months following the last regular Session or the Sessions will be forfeited. If the Touch-Up Service has expired or if all Touch-Up Sessions are completed, you can elect for additional sessions at a reduced fee as outlined on Schedule D.

DS SP
**Your Initials**

c. Additional Service Areas. Any additional areas that are later requested by you will be an additional service requiring a new contract charged at our then-current fees.

DS SP
**Your Initials**

If you choose the Fee Per Session package, You agree that you are not eligible for the Lifetime Membership, including Touch-Up Sessions, when choosing this package.

DS SP
**Your Initials**

3. Before any services are rendered by us, you will sign the Informed Consent in Schedule A. You agree that we may cancel a service if the Service Requirements (as defined in the Informed Consent in Schedule A) are not met to our satisfaction. You understand that the Service Requirements must be followed for each and every service date and in between services as described on Schedule B.

4. Should you cancel any scheduled service, **WE CANNOT GUARANTEE THAT THESE APPOINTMENTS WILL BE RE-SCHEDULED WITHIN YOUR SERVICE WINDOWS.**

5. IF YOU FAIL TO APPEAR FOR SCHEDULED LHR SERVICES OR CANCEL SCHEDULED LHR SERVICES LESS THAN 24 HOURS PRIOR TO THE TIME SCHEDULED FOR THOSE LHR SERVICES, WE MAY, AT OUR SOLE AND ABSOLUTE DISCRETION, ASSESS A FIFTY DOLLAR ($50.00) FEE.

DS SP
**Your Initials**

EXHIBIT 1

6. We may terminate this Agreement in the event that our medical director, or his or her appropriately licensed designee, in good faith determines that the LHR Services should be discontinued because continuing services poses a potential health risk or a risk of injury to you or others. We may also terminate this Agreement without refund if, in our sole determination, you disturb or disrupt our staff or facility. If you do not follow the requirements of this Agreement, we have the right to terminate this Agreement without refund.

**Your Initials** SP

7. We may also terminate this Agreement at any time and for any reason and we will then refund you as follows: If the medical director or his or her appropriately licensed designee determines that you are not an appropriate candidate to receive LHR Services and service has not yet begun, you will receive a full refund. If service has begun, you will receive a refund in the amount of the total service fee price we received divided by five (5) then multiplied by the number of outstanding services, less a $100 administrative fee. We agree to refund the appropriate amount within forty-five (45) days of receipt of your signing and returning our Release or Refund Form. Upon termination of this Agreement pursuant to this paragraph, neither party shall have any further obligations or rights under this Agreement other than those, provided in the below paragraphs, which survive the termination or expiration of this Agreement. **EXCEPT IN ACCORDANCE WITH THIS SECTION AND STATE LAW, ALL FEES AND SERVICES ARE NONREFUNDABLE.**

**Your Initials** SP

8. Any and all claims arising out of or relating to this Agreement must be made by written notice to the other party within one (1) year from the occurrence of the facts giving rise to such claim.

**MANDATORY MEDIATION AND BINDING ARBITRATION PROVISION – READ CAREFULLY**

9(a). ANY CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR THE PRODUCTS SUPPLIED OR SERVICES PERFORMED OR THE PROMOTION OR ADVERTISING OF THOSE PRODUCTS OR SERVICES BY IDEAL IMAGE UNDER THIS AGREEMENT OR ANY OTHER AGREEMENT, REGARDLESS OF WHETHER THE CONTROVERSY OR CLAIM AROSE BEFORE OR AFTER THE EXECUTION, TRANSFER OR ACCEPTANCE OF THIS AGREEMENT, INCLUDING BUT NOT LIMITED TO ANY CONTRACT, TORT OR STATUTORY CLAIMS, AND ANY CLAIMS FOR PERSONAL OR BODILY INJURY, ECONOMIC INJURY, OR DAMAGE TO REAL OR PERSONAL PROPERTY, WHETHER IN LAW OR EQUITY, SHALL BE SETTLED ON AN INDIVIDUAL BASIS IN BINDING ARBITRATION, EXCEPT THAT IDEAL IMAGE MAY FILE AN INDIVIDUAL ACTION IN THE SMALL CLAIMS COURT (OR EQUIVALENT VENUE) IN THE COUNTY WHERE CUSTOMER RESIDES FOR THE RECOVERY OF MONEY PAID OR MONEY OWED WHICH AMOUNT DOES NOT EXCEED THE JURISDICTIONAL LIMITS OF THE SMALL CLAIMS COURT OR $5,000.00, WHICHEVER IS LESS. IF IDEAL IMAGE DISMISSES THE CLAIM, WITH OR WITHOUT PREJUDICE, THEN YOU AGREE TO DISMISS WITHOUT PREJUDICE ANY COUNTERCLAIM AS WELL. IN NO EVENT SHALL YOU BRING A COLLECTIVE, CLASS, OR OTHER REPRESENTATIVE ACTION AS A COUNTERCLAIM OR OTHER TYPE CLAIM IN SMALL CLAIMS COURT.

9(b). THE ARBITRATION SHALL BE ADMINISTERED UNDER THE RULES OF THE AMERICAN ARBITRATION ASSOCIATION ("AAA") AND SHALL BE CONDUCTED BY AAA. IF ADMINISTERED UNDER THE AAA RULES, A CLAIM SHALL BE DETERMINED UNDER THE AAA SUPPLEMENTARY PROCEDURES FOR CONSUMER-RELATED DISPUTES IN CASES WHERE SUCH PROCEDURES ARE APPLICABLE. TO THE EXTENT PERMITTED BY LAW, YOU AND IDEAL IMAGE AGREE THAT THE ARBITRATOR TO THE EXTENT PERMITTED BY LAW, SHALL FOLLOW THE SUBSTANTIVE LAW OF THE STATE OF FLORIDA, INCLUDING THE TERMS AND CONDITIONS OF THIS AGREEMENT. THE ARBITRATOR'S POWERS TO CONDUCT ANY ARBITRATION PROCEEDING UNDER THIS AGREEMENT SHALL BE LIMITED AS FOLLOWS: ANY ARBITRATION PROCEEDING UNDER THIS AGREEMENT WILL NOT BE CONSOLIDATED OR JOINED WITH ANY ACTION OR LEGAL PROCEEDING UNDER ANY OTHER AGREEMENT OR INVOLVING ANY OTHER PREMISES, AND WILL NOT PROCEED AS A CLASS ACTION, PRIVATE ATTORNEY GENERAL ACTION, OR SIMILAR REPRESENTATIVE ACTION.

9(c). EITHER PARTY HAS THE RIGHT TO REQUIRE A PANEL OF THREE (3) ARBITRATORS, BUT IN THE ABSENCE OF THE PARTIES' AGREEMENT, THE REQUESTING PARTY SHALL BE RESPONSIBLE FOR THE COST OF THE ADDITIONAL ARBITRATORS. EITHER PARTY MAY REQUEST AT ANY TIME PRIOR TO THE HEARING THAT THE AWARD BE ACCOMPANIED BY A REASONED OPINION. THE AWARD RENDERED BY THE ARBITRATOR(S)

SHALL BE FINAL AND BINDING ON ALL PARTIES AND ENFORCEABLE BY ANY COURT WITH JURISICTION, EXCEPT THAT A PARTY MAY WITHIN 30 DAYS OF THE ORIGINAL AWARD REQUEST AN ARBITRAL APPEAL TO AN APPEAL TRIBUNAL, CONSTITUTED IN THE SAME NUMBER AND BY THE SAME PROCESS AS THE INITIAL ARBITRATOR(S). THE APPEALING PARTY SHALL BE RESPONSIBLE FOR THE FILING FEE AND OTHER ARBITRATION FEES AND COSTS SUBJECT TO AWARD BY THE APPEAL TRIBUNAL UNDER APPLICABLE LAW. THE APPEAL TRIBUNAL SHALL REVIEW ALL QUESTIONS OF LAW AND FACT UNDER A CLEARLY ERRONEOUS STANDARD. THE AWARD OF THE APPEAL TRIBUNAL SHALL BE FINAL AND BINDING. JUDGMENT MAY BE ENTERED ON THE AWARD IN ANY APPROPRIATE COURT.

9(d). THIS ARBITRATION PROVISION IS MADE PURSUANT TO A TRANSACTION INVOLVING INTERSTATE COMMERCE AND SHALL BE GOVERNED BY THE FEDERAL ARBITRATION ACT. IF FOR ANY REASON THE FAA IS DETERMINED BY A COURT OF COMPETENT JURISDICTION NOT TO APPLY TO THE ARBITRATION PROVISIONS OF THIS AGREEMENT, THEN THE REVISED FLORIDA ARBITRATION CODE (FLORIDA STATUES 682.01-682.25 (2014)) SHALL GOVERN THE ARBITRATION PROVISIONS OF THIS AGREEMENT. THE PARTY INITIATING THE CLAIM SHALL PROVIDE WRITTEN NOTICE TO THE OTHER PARTY 60 DAYS PRIOR TO INITIATING ANY CLAIM WHICH PROVIDES REASONABLE NOTICE OF THE BASIS OF THE CLAIM, ITEMIZES ALLEGED DAMAGES, AND MAKES A SPECIFIC DEMAND.

9(e). BEFORE HAVING RECOURSE TO ARBITRATION OR SMALL CLAIMS COURT, THE PARTIES SHALL TRY IN GOOD FAITH TO SETTLE ANY CONTROVERSY OR CLAIM BY AT LEAST TWO (2) HOURS OF MEDIATION ADMINISTERED UNDER THE AAA WITH IDEAL IMAGE AGREEING TO PAY THE COSTS OF THE MEDIATOR IN CASES BROUGHT BY YOU AS LONG AS THE FEE IS MEDIATORS OR NOT HIGHER THAN $300. THE AAA MAY BE CONTACTED AT THE TOLL-FREE NUMBER 800.778.7879, OR THROUGH THE FOLLOWING WEBSITE: HTTP://WWW.ADR.ORG.

9(f). IN THE EVENT THAT AAA IS NOT AVAILABLE TO RESOLVE THIS CONFLICT, THE PARTIES WILL AGREE UPON A NEUTRAL ARBITRATORS, OR COURT WITH PROPER JURISDICTION MAY SELECT ONE, SUBJECT TO ALL THE OTHER TERMS OF THIS AGREEMENT.

10. AN ARBITRATION AWARD AND ANY JUDGMENT CONFIRMING IT APPLY ONLY TO THAT SPECIFIC CASE; THE JUDGMENT CANNOT BE USED IN ANY OTHER CASE EXCEPT TO ENFORCE THE AWARD ITSELF.

**11. IF FOR SOME REASON THE PROHIBITION ON CLASS ARBITRATIONS SET FORTH IN SUBSECTION 10(a) IS FOUND TO BE UNENFORCEABLE, THEN THE AGREEMENT TO ARBITRATE WILL NOT APPLY.**

**12. IF FOR ANY REASON A CLAIM PROCEEDS IN COURT RATHER THAN THROUGH ARBITRATION, YOU AND IDEAL IMAGE AGREE THAT THERE WILL NOT BE A JURY TRIAL. YOU AND IDEAL IMAGE UNCONDITIONALLY WAIVE ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT IN ANY WAY. IN THE EVENT OF LITIGATION, THIS PARAGRAPH MAY BE FILED TO SHOW A WRITTEN CONSENT TO A TRIAL BY THE COURT.**

**13. TO THE FULLEST EXTENT PERMITTED BY LAW ALL CLAIMS AGAINST EACH OTHER FOR DAMAGES OR OTHER MONETARY RELIEF SHALL BE LIMITED TO DIRECT DAMAGES. THIS LIMITATION AND WAIVER WILL APPLY REGARDLESS OF THE THEORY OF LIABILITY. THAT MEANS NEITHER PARTY MAY RECOVER INDIRECT, SPECIAL, CONSEQUENTIAL, TREBLE, OR PUNITIVE DAMAGES FROM THE OTHER PARTY. HOWEVER, THIS LIMITATION AND WAIVER ALSO APPLIES IF YOU BRING A CLAIM AGAINST ONE OF OUR SUPPLIERS, AGENTS, OR OTHERS IN CONTRACTUAL PRIVITY OR ANY OTHER RELATIONSHIP, TO THE EXTENT WE WOULD BE REQUIRED TO INDEMNIFY THE SUPPLIER, AGENT, OR OTHERS FOR THE CLAIM.**

14. Our failure to exercise any rights under this Agreement will not be deemed a waiver of such right or any other rights. We shall not be deemed to have waived our right to demand exact compliance with any of the terms of this Agreement, even if at any time: (a) We do not exercise a right or power available to us under this Agreement; or (b) We do not insist on your strict compliance with the terms of this Agreement; or (c) If there develops a custom or practice which is at variance with the terms of this Agreement; or (d) If we accept payments which are otherwise due to us under this Agreement. Similarly, our waiver of any particular breach or series of breaches under this Agreement or of any similar term in any other agreement between you and us will not affect our rights with respect to any later breach by you.

DocuSign Envelope ID: 6C924982-20D9-4E8D-B447-70B605A5EC64

15. This Agreement, including Schedules A through D attached hereto and incorporated as an integral part of this Agreement, constitutes the entire agreement of the parties with respect to the subject matter hereof, and supersedes all previous proposals, oral or written, and all negotiations, conversations, or discussions heretofore had between the parties related to this Agreement. You acknowledge that you have not been induced to enter into this Agreement by any representations or statements, oral or written, not expressly contained herein.

16. This Agreement will not be deemed or construed to be modified, amended, rescinded, canceled, or waived, in whole or in part, except by written amendment signed by us and you, except that this Agreement may be immediately terminated or modified by us as expressly provided in this Agreement.

17. To the fullest extent permitted by law, this Agreement will be governed by and construed in accordance with the laws of the State of Florida. The parties agree that any dispute under this agreement must be resolved in Hillsborough County, Florida, except that any dispute submitted to arbitration by you seeking less than $12,500 inclusive of all damages, costs, and attorney's fees, may be filed in the county where you received the majority of the services which are the subject of the arbitration demand.

18. In the event that any of the terms of this Agreement are in conflict with any rule of laws, regulations, provisions, or otherwise unenforceable under the laws or regulations of any government or subdivision thereof, such terms shall be construed, to the extent possible, to render the same valid and as close to the parties original intent as is permissible. To the extent that such construction is not possible, the offending provision or provisions, or portions of the provision or provisions, shall be deemed void, and the remainder of this Agreement shall nevertheless be valid, enforceable, continuous in force, and remain unaffected by the invalidated provision or provisions or portions of the provision or provisions found to be unenforceable. Paragraphs nine (9) through twenty-two (22) of this Agreement shall survive the termination of the Agreement.

19. We may assign this Agreement at any time. You shall not and waive any right to assign or otherwise transfer this Agreement.

20. The parties agree that there should be no construction of this agreement against Ideal Image because it drafted the agreement.

21. You acknowledge and agree that you have received a copy of our Notice of Privacy Practices and will sign the acknowledgment of receipt.

IN WITNESS WHEREOF, the parties have executed this Agreement under seal effective the date first written above. **THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES.**

**"US":** Ideal Image Group of Arkansas, PLLC

Signature: DocuSigned by: Emily Kelley EC6AAD8D52644FA...

Name: Emily Kelley

Title: Consultant

Date: 4/16/2016

**"YOU":** Sarah Pierce

Your Signature: DocuSigned by: Sarah Pierce 96ABF9F6E83F4AF...

Your Name: Sarah Pierce

Date Signed: 4/16/2016

In the event that I am signing on behalf of a minor (under the age of 18), I acknowledge that I have full authority to do so, and understand the binding effect on the minor as well as myself.

Signature of Parent or Legal Guardian:______________________________

Name of Parent of Legal Guardian:______________________________

I further give permission for the minor to be serviced in my absence pursuant to this Agreement.

Signature of Parent of Legal Guardian: ______________________________

**SCHEDULE A**
**INFORMED CONSENT AND AUTHORIZATION**

You hereby make the following acknowledgments with respect to the LHR Services to be received by you under this Agreement:

**(i)** You hereby voluntarily consent to the elective LHR Services and understand that the LHR Services will be provided with a Candela Alexandrite Laser and/or a Candela GentleYAG laser. These lasers are manufactured by a third party, Candela Corporation. You understand that the LHR Services must be repeated several times before satisfactory results are achieved, although there is no warranty or guaranty that all hair will be permanently removed from the Service Area. You understand that a different provider may provide services at each session.

**(ii)** You must strictly comply with all of the Service Requirements identified below in this Agreement. You agree that we may refuse service if the Service Requirements are not met to our satisfaction with respect to each and every session. You understand that you must notify us if you have not followed the Service Requirements. The following is a list of the Service Requirements ("Service Requirements") for the LHR Services:

(a) Sun Exposure. You agree to refrain from all forms of sun exposure, tanning sprays, and UV lights, for at least four (4) weeks prior to and one (1) week after each session or as directed by your Provider;

(b) Anesthetic Cream. You agree to follow all anesthetic cream instructions;

(c) Hair Removal. You agree that you will not wax, tweeze, or use hair removal creams during the Service Schedule. You agree to shave the Service Area within twenty-four hours (24) prior to each session, unless otherwise instructed by laser service provider;

(d) Medications. You agree to refrain from the use of skin creams and medications that may cause skin sensitivity for at least two (2) weeks prior to each session; and

(e) Health Conditions. You understand that you will need to notify us promptly if any health conditions have changed during the Service Schedule. These include, but are not limited to, pregnancy, polycystic ovarian syndrome (PCOS), and other immune deficiency, hormonal, and metabolic disorders.

**(iii)** You understand that the LHR Services will involve using laser beams at an energy dosage that is relative to skin color, hair color, and texture and that a light cortisone-type ointment, aloe, gel, and/or ice packs may be administered to the Service Area.

**(iv)** You understand that the total duration of each service will vary based on the size of the service area.

**(v)** You understand that the alternatives to laser hair removal include shaving, waxing, and electrolysis.

**(vi)** You understand that the LHR Services may involve the following risks or discomforts:

(a) Temporary pain, burning, or a stinging sensation at or near the Service Area;

(b) Redness and/or swelling at or near the Service Area;

(c) Ulceration and/or infection at or near the Service Area;

(d) Pigmentary (color) changes at the Service Area, including decrease in skin color (hypopigmentation or lightening) and/or increase in skin color (hyperpigmentation or darkening);

(e) Scar formation in the Service Area;

(f) Laser-induced burns or blistering in the Service Area or surrounding tissue;

(g) Poor cosmetic outcome and/or recurrence of, increase of, or stimulation of hair growth in Service Area;

(h) Inadvertent damage or removal of moles, beauty marks, or tattoos;

(i) Eye injury; and

(j) Temporary increase of acne lesions or folliculitis in the service area.

**(vii)** You understand that the following health conditions will not be treated by the laser service providers: melanoma, AIDS nor will service occur over active fungal, bacterial or viral rashes or lesions (e.g., genital warts). You acknowledge and represent that you are not experiencing any of the above conditions. You agree that, if you develop any of the above conditions at any time then you will immediately notify our medical director or the laser service provider of the condition. The Provider may elect to postpone your service if you have had a recent chemical peel, laser peel, or other cosmetic procedure, or any other temporary condition of your skin that they deem should resolve prior to your next laser service.

**(viii)** You understand gray, white, blonde, or red hair color will not respond to Laser Hair Removal. You also understand that hair regrowth may be caused by hormone medication, polycystic ovary syndrome ("PCOS") and pregnancy.

**(ix)** You authorize us to use your medical information for purposes of informing you of, or marketing to you, additional goods or services that we may offer from time to time. You agree that we may take photos of the Service Area for medical reasons, or for use in marketing materials provided such photos do not reveal your identity.

DocuSign Envelope ID: 6C924982-20D9-4E8D-B447-70B605A5EC64

**(x)** You authorize us to use or disclose your medical information as needed for payment or healthcare operations purposes. For example, we may disclose your information to billing companies, consultants, and other professionals as needed for our day-to-day business activities.

**(xi)** You have read this Agreement (including this Informed Consent) in full, you understand all of the provisions in this Agreement, and you have been given the opportunity to ask questions regarding the LHR Services.

Your Signature: DocuSigned by: Sarah Pierce 96ABF9F6E83F4AF...

Your Name: Sarah Pierce

Date Signed: 4/16/2016

Signature of Parent or Legal Guardian:______________________________

Name of Parent or Legal Guardian ______________________________

DocuSign Envelope ID: 6C924982-20D9-4E8D-B447-70B605A5EC64

**SCHEDULE B**
**FEE**

You have agreed to the package listed below:

**Standard Package**

**Pricing** - You agree to pay us a onetime payment for the LHR Services in the amount of $1,274.00. In the event that you elect to discontinue LHR Services or otherwise terminate this Agreement, except in accordance with this Agreement, you will not be entitled to any refund of any portion of this payment.

"**US**": Ideal Image Group of Arkansas, PLLC

Signature: DocuSigned by: Emily Kelley EC6AAD8D52644FA...

Name: Emily Kelley

Title: Consultant

Date: 4/16/2016

"**YOU**": Sarah Pierce

Your Signature: DocuSigned by: Sarah Pierce 96ABF9F6E83F4AF...

Your Name: Sarah Pierce

Date Signed: 4/16/2016

DocuSign Envelope ID: 6C924982-20D9-4E8D-B447-70B605A5EC64

**SCHEDULE C FEMALE FULL BODY**
**MARKED AREAS TO BE SERVICED**

**FEMALE FULL BODY**

**Your Initials** ______

You acknowledge that the above marked areas are the total areas requested to be serviced. Should you request to add additional areas to be serviced, additional charges will apply at our then-current rates, and a new contract must be signed. You acknowledge that only those areas printed on Schedule D are to be serviced and that diagrams herein are provided only as a visual resource for you.

DocuSign Envelope ID: 6C924982-20D9-4E8D-B447-70B605A5EC64

**SCHEDULE D**
**SERVICE AREAS AND LIFETIME MEMBERSHIP**

**Lifetime Membership** – Only the Standard Package, 50/50, and EZ Pay Packages include a lifetime membership ("Membership"). In the event of new hair growth during the course of your lifetime, you will be entitled to re-service of the same Service Area with equipment of our choosing. You hereby acknowledge that you are only eligible to receive services to the body areas listed below, and that should you elect to receive a 10th or subsequent service, you must pay the amount listed here for each additional service to that body area:
$50.00 for the body area Underarms

**NOTE: THIS FIELD CANNOT BE ZERO OR "NO CHARGE". A CHARGE WILL BE APPLIED IN ACCORDANCE WITH CORPORATE'S CURRENT FEE SCHEDULE IF ALTERED IN ANY WAY, LEFT BLANK, OR NO CHARGE IS WRITTEN.**

Your Signature: DocuSigned by: Sarah Pierce 96ABF9F6E83F4AF...

Your Name: Sarah Pierce

Date Signed: 4/16/2016

Signature of Parent or Legal Guardian:____________________

Name of Parent or Legal Guardian ____________________

 2545929-2339669

DocuSign Envelope ID: 6C924982-20D9-4E8D-B447-70B605A5EC64

## **Pre** Hair Removal Treatment Expectations

**1.** Do not wax, tweeze or use hair removal creams at anytime during treatment.

**2.** We may prescribe a compounded anesthetic numbing cream. Apply a small amount of cream to the area and rub in thoroughly. If you are applying this cream to your legs (thighs or lower legs, but not both) your full back, your full chest or both arms, DO NOT use it on any other body area on the same treatment date. Legs, backs, chests and arms requiring this medication must each be treated on separate dates. Other areas not requiring this medication may be treated on the same date. This prescription should last for most or all of your treatments. Pregnant and nursing mothers cannot use numbing cream. Inform us of any pre-existing heart conditions.

**3.** It is important to stay out of the sun for a minimum of 4 weeks prior to treatment or longer if you retain a tan for a long time. This includes tanning beds and self-tanning creams. We cannot treat anyone with a sunburn or fresh tan.

**4.** Please shave the area to be treated within 24 hours before your treatment. We can do a little touch up but shaving large areas is best done in the comfort of your home.

**5.** It is best not to wear make up on an area to be treated: but we can always remove it before your laser session. ALL skin products MUST be removed thoroughly prior to laser treatment.

**6.** Guests undergoing bikini line hair removal should wear a narrow cut panty or swim suit.

**7.** If the area we are treating requires disrobing, you will be given a gown. In general most clients are able to keep some or all of their clothes on during the procedure.

**8.** Please be on time for your appointment. We make every effort to ensure our Guests do not have to wait. We reserve the right to re-schedule your appointment if you are late or have not complied with the pre-treatment instructions.

**9.** We recommend that you not use Retin-A two weeks prior to treatment if the Retin-A product causes skin irritation or inflammation in the area. You may resume Retin-A after your laser treatment unless your skin is irritated from the laser. In that case we recommend waiting until your skin returns to normal following laser treatment.

**10.** Prior to your appointment please make arrangements with someone to watch your children.

## **Post** Hair Removal Treatment Expectations

**1.** All Guests should avoid the sun for 1 week and thereafter use a sun block (High SPF with zinc or titanium oxide).

**2.** Small red areas may be present directly around individual hairs. This is normal. If a burning sensation occurs, apply ice for 20 minutes and repeat as necessary. One method that works well involves placing a damp washcloth in the freezer. Once frozen remove and place it over the area. It will then mold to any curved surfaces, especially the face.

**3.** Typically treated hairs may fall out over a 7-21 days period. As the hair follicle dissipates you may remove the dead hairs before they fall out if you desire. The hair may also appear stunned and will not grow in length as before.

**4.** We may recommend using moisturizers and other skin care products after laser treatment. Please follow the instructions for best results.

**Guest Initials:** DS SP

www.idealimage.com

©2014 IIDC

DocuSign Envelope ID: 6C924982-20D9-4E8D-B447-70B605A5EC64

# ACKNOWLEDGEMENT OF RECEIPT OF NOTICE OF PRIVACY PRACTICES

I, Sarah Pierce ______________________ have received a copy of this office's Notice of Privacy Practices.

Sarah Pierce
______________________
Please Print Name

DocuSigned by:
Sarah Pierce
96ABF9F6E83F4AF...
______________________
Signature

4/16/2016
______________________
Date

**For Office Use Only**

We attempted to obtain written acknowledgement of receipt of our Notice of Privacy Practices, but acknowledgement could not be obtained because:

☐ Individual refused to sign

☐ Communications barriers prohibited obtaining the acknowledgment

☐ Other (Please Specify)

______________________

______________________

______________________

# Ideal Image VIP® Credit Card Application

**Name Of Applicant:** Sarah Pierce

To apply you must:
- Be at least 18 years of age.
- Be a U.S. resident residing in the United States.
- Have a U.S. Social Security Number.
- Have a street, rural route or APO/FPO mailing address (no PO Box addresses)
- Have a valid government-issued photo ID

**Contact Information**
By providing your contact information, including any cellular or other phone numbers, you agree to be contacted regarding any of your Comenity Bank or Comenity Capital Bank accounts via calls to cell phones, text messages or telephone calls, including the use of artificial or pre-recorded message calls, and calls made via automatic telephone dialing systems, or via e-mail.

**Annual Income**
Alimony, child support or separate maintenance income need not be included if you do not wish to have it considered as a basis for repaying this obligation. For Individual applications: **Married WI Residents only-** If you are applying for an individual account and your spouse also is a WI resident, combine your and your spouse's financial information.

**IMPORTANT INFORMATION ABOUT OPENING AN ACCOUNT** To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account. What this means for you: When you open an account, we will ask for your name, address, date of birth or other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

**CA Residents:** If you are married, you may apply for a separate account. **OH Residents:** The Ohio laws against discrimination require that all creditors make credit equally available to all creditworthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law. **NY, RI and VT Residents:** We may order credit reports in connection with processing applications/solicitations and any update, renewal or extension of credit. Upon request, we will tell you the name and address of any consumer-reporting agency that furnished a report on you. You consent to the obtaining of such reports by signing or otherwise submitting an application or solicitation. **WI Residents:** No provision of a marital property agreement, unilateral statement under Section 766.59 or court decree under Section 766.70 adversely affects the interest of Comenity Capital Bank, unless the Bank, prior to the time credit is granted, is furnished a copy of the agreement, statement or decree or has actual knowledge of the adverse provision when the obligation to the Bank is incurred.

## Ideal Image VIP® Credit Card Rates and Fee Information

There are costs associated with the use of this credit card account. To obtain information about these costs, call us at 866-490-9888 (TDD/TTY 888-819-1918) or write to us at Comenity Capital Bank, PO Box 183003, Columbus, OH, 43218-3003.

**NOTICE:** I also agree that this application/solicitation and any information I submitted with it may be forwarded to other creditors. If it is, I understand that any offer of credit from such other creditors will be independent of the Bank and may include different terms and conditions, including rates and fees, than those disclosed by the Bank. Ideal Image or the other creditors, not the Bank, will provide me any required disclosures from such other creditors. By signing/submitting, I further agree that such other creditors may obtain a credit report and use it in making a credit decision.

**How We Will Calculate Your Balance:** We use a method called "daily balance." See your Account agreement for more details.

By signing or otherwise submitting this application/solicitation, each applicant ("I," "me" or "my" below) agrees and certifies that (1) I have read and agree to the disclosures provided on or with this application/solicitation, (2) the information I have supplied is true and correct, (3) I am applying to Comenity Capital Bank, P.O. Box 183003, Columbus, OH 43218-3003 ("Bank") for an Ideal Image VIP® Credit Card Account, (4) I authorize the Bank to obtain credit reports on me, (5) if approved, my account will be governed by the Credit Card Agreement, (6) I understand that I may pay all of my account balance at any time without penalty and (7) this application/solicitation, any information I submitted to the Bank, and the Bank's final decision on my application/solicitation may be shared with and retained by Ideal Image®.

**Applicant Signature** Sarah Pierce **Date:** 4/16/16

**Print Name:** Sarah Pierce

DocuSign Envelope ID: 6C924982-20D9-4E8D-B447-70B605A5EC64

# Estimated Purchase Amount: $ 1,274.00

## Promotional Plan

| **Plan Term:** | **Estimated Monthly Payment:** | **Estimated Total Cost:** |
|---|---|---|
| 12 MONTH DEFER INT PAYMENT REQUIRED (412) | $107 / Month | $1,274 |

**No interest if paid in full within 12 months.** Interest will be charged to your account at the standard variable APR of 27.24% from the purchase date if the purchase balance is not paid in full within the 12 month promotional period or if you make a late payment. To avoid late fees, you must make your Total Minimum Monthly Payments by the due date each month. The Minimum Monthly Payments may or may not pay off the promotional purchase before the end of the promotional period. **To make sure that you are not charged the interest accrued at the standard variable APR of 27.24% (based on the Prime Rate), you must pay the total promotional purchase amount within the promotional period.** Required minimum purchase of $999.

Purchase must be made using Ideal Image® Credit Card Account offered by Comenity Capital Bank which determines qualifications for credit and promotion eligibility. Account must be in good standing at the time of purchase. At no time will the minimum payment due be less than $27. Minimum Interest Charge is $2 per credit plan. Standard variable APR of 27.24% (based on the Prime Rate). Subject to credit approval and availability.

The estimated minimum payment due shown reflects the amount due if your previous balance is zero. Purchase must be made using your credit account. If your previous balance is not zero, see your Credit Card Agreement for additional information regarding the minimum payment due. The estimated monthly payment was calculated using the following assumptions: payments are made each period; no debt cancellation or suspension agreement applies to the Account; no taxes or ancillary charges are or will be added to the Account; goods or services are delivered on a single date; and you are not currently and will not become delinquent on the Account.



DocuSign Envelope ID: 6C924982-20D9-4E8D-B447-70B605A5EC64

# VIP CREDIT CARD APPROVAL

Congratulations! Sarah Pierce ______ is approved for an Ideal Image® VIP credit card.

Date: 04/16/2016

Account Number **(MASK ALL BUT LAST 4 DIGITS):** 8813

Approved Amount: $6000.00

Payment Amount: $1274.00

Promotional Plan Selection: 12 months

Estimated Monthly Payment to Pay in Full within the Promotional Period*: $107

**Please check below the applicable Promotional Plan selected by the applicant:**

x____ Deferred Interest Regular Min. Payment Required
_____ Low APR Equal Payments
_____ Budget Pay w/payment - $99/$149/$199/$299
_____ Standard Revolving

**Next Step:** Simply have applicant **sign, initial** and **date** below. Please give the applicant a copy for his/her records and retain the original.

**Ideal Image® Sales Receipt**

Applicant Name: Sarah Pierce

Provider Name: Ideal Image

Provider ID#: 0098

**By initialing here, I verify that I have read and received a copy of the terms and conditions for my Ideal Image® VIP credit card account.**

Applicant Initial: SP

**As named Applicant, I authorized Ideal Image® to remit the above amount to my provider.**

Applicant Signature: Sarah Pierce Date: 4/16/16

*The Estimated Monthly Payment to Pay in Full within the Promotional Period is a representative example based on assumptions we made about your Account. This estimated monthly payment may or may not be equal to the required minimum payment due on your billing statement (See the Minimum Payment section of your Credit Card Agreement for details on minimum monthly payments). If you make this estimated monthly payment and have no other balance on your account, you can pay the total amount financed within the promotional period. The estimated monthly payment shown was calculated using the following assumptions: payments are made on time each billing cycle; no debt cancellation or suspension agreement applies to the Account; no interest rate changes will affect the Account; no taxes or ancillary charges are or will be added to the Account; goods and services are delivered on a single date; and you are not currently and will not become delinquent on the Account.

DocuSign Envelope ID: 6C924982-20D9-4E8D-B447-70B605A5EC64

IDEAL IMAGE

Ideal Office

**Patient:** Sarah Pierce
**Patient ID:** 2545929

**Payment Amount:** $1,274.00
**Payment Date:** 04/16/2016
**Payment Type:** Financing

**Payment Applied To:**

| Invoice Number | Amount Applied |
|---|---|
| 1318290 | $1,274.00 |

| Invoice Number | Treatment(s) | Payments | |
|---|---|---|---|
| 1318290 | Basic Body Product Package Qty: 1 / Underarms | **Invoice Subtotal:** | **$1,274.00** |
| | | **Tax Rate:** | **0.00 %** |
| | | **Taxes:** | **$0.00** |
| | | **Invoice Amount:** | **$1,274.00** |
| | | Financing Payment: 04/16/2016: | $1,274.00 |
| | | **Amount Due:** | **$0.00** |

**Guest Signature:** DocuSigned by: Sarah Pierce 96ABF9F8E83F4AF...

# IDEAL IMAGE®

## LASER HAIR REMOVAL

ORION All sarah pierce

i Center | Today Dashboard | Schedule | Chatter | Guests | Appointments | Quotes | Contracts | Invoice | Reports | More

Guests > Sarah Pierce

**Appointments**

4 items • Sorted by Appointment Date (Local) • Updated 3 minutes ago

| | APPOINT... | APPOINTMEN... | STATUS | TREATM... | PROVIDER... | ROOM | EQUI... | ACTUAL STAR... | ACTUAL END | CON... |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | [illegible] | 7/23/2016 10:30 AM | | Hair Removal | | Treatment Room 1 | [illegible] | 7/23/2016 10:34... | 7/23/2016 10:39... | |
| 2 | [illegible] | 6/4/2016 10:30 AM | | Hair Removal | | Treatment Room 1 | [illegible] | 6/4/2016 10:18 ... | 6/4/2016 10:20 ... | |
| 3 | [illegible] | 4/16/2016 10:00 PM | Show | Hair Removal | | Treatment Room 1 | [illegible] | 4/16/2016 11:10... | 4/16/2016 11:25... | |
| 4 | [illegible] | 4/16/2016 10:00 AM | Buy | [illegible] | Emily Kelley | | | 4/16/2016 10:08... | 4/16/2016 11:11... | |

Hayley Fox

Ideal Image



**ALLEN & WITHROW**
**Attorneys at Law**
**12410 Cantrell, Suite 100**
**Little Rock, Arkansas 72223**
**www.allenwithrow.com**

**(501) 227-2000**
**Fax (501) 707-1214**

**Henry "Gus" Allen**
**Lori E. Withrow**
**Gary J. Barrett: of counsel***
**Byron Southern: of counsel**

**Mailing Address**
**Post Office Box 17248**
**Little Rock, AR 72222**
**Toll Free 800-796-7940**
***Licensed in Missouri**

December 20, 2018

SARAH PIERCE
170 SHENANDOAH DR
CONWAY, AR 72032

Re: Portfolio Recovery Associates, LLC
Original Creditor: COMENITY CAPITAL BANK
COMENITY CAPITAL BANK
IDEAL IMAGE
Original Creditor Number ending in: ************8813
$3,605.96

Dear SARAH PIERCE:

Our firm has been retained by Portfolio Recovery Associates, LLC to collect from you the sum of $3,605.96. When calling or writing, please ask for an account representative and refer to our file number: 18-09751.

Unless you dispute the validity of the debt or any portion thereof within thirty (30) days after receipt of this notice, our firm will assume this debt to be valid. If you notify us in writing within this thirty (30) day period that the debt, or any portion thereof is disputed, we will obtain verification of the debt or a copy of a judgment as applicable, and a copy of such verification or judgment will be mailed to you. Upon written request within the thirty (30) day period we will provide you with the name and address of the original creditor if different from the current creditor above.

This letter has been sent on behalf of this firm and our client.

Sincerely,

Allen & Withrow

**This communication is from a debt collector and is an attempt to collect a debt.**
**Any information will be used for that purpose.**

18-09751
dlpra.frm

EXHIBIT 3

**IN THE DISTRICT COURT OF FAULKNER COUNTY, ARKANSAS.**
**CONWAY DIVISION**

**PORTFOLIO RECOVERY ASSOCIATES, LLC** **PLAINTIFF**

**V.** **CASE NO.** CVCV-19-453

**SARAH PIERCE** **DEFENDANT**

**SUMMONS**
**(NOTICE OF LAWSUIT)**

THE STATE OF ARKANSAS TO DEFENDANT:

SARAH PIERCE
170 SHENANDOAH DR
CONWAY AR 72032

**A lawsuit has been filed against you. The relief demanded is stated in the attached complaint. Within 30 days after service of this summons on you (not counting the day you received it)-or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas- you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.**

**The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:**

Lori Withrow
P.O. Box 17248
Little Rock, AR 72222
(501) 227-2000

**If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.**

18-09751
ssa.fm

EXHIBIT 4

**Additional Notices Included:** ______________________________

CLERK OF COURT

Address of Clerk's Office:
Faulkner County District Court
810 Parkway
Conway, AR 72032

DISTRICT COURT OF FAULKNER COUNTY CONWAY DIVISION CONWAY ARKANSAS SEAL

COURT CLERK DC

DATE

[Seal]

**No.** ________ **This summons is for SARAH PIERCE**

**PROOF OF SERVICE**

☐ On ______________________ [date] I personally delivered the summons and complaint to the defendant at 170 Shenandoah Pky Conway AR [place]; or

☐ After making my purpose to deliver the summons and complaint clear, on ______________________ [date] I left the summons and complaint in the close proximity of the defendant by ______________________ [describe how the summons and complaint was left] after he/she refused to receive it when I offered it to him/her; or

☒ On 4-12-19 [date] I left the summons and complaint with Husband, a member of the defendant's family at least 18 years of age at 170 Shenandoah Pkwy Conway, AR [address], a place where the defendant resides; or

☐ On ______________________ [date] I delivered the summons and complaint to ______________________ [name of individual], an agent authorized by appointment or by law to receive service of summons on behalf of ______________________ [name of defendant]; or

☐ On ______________________ [date] at ______________________ [address], where the defendant maintains an office or other fixed location for the conduct of business, during normal working hours I left the summons and complaint with ______________________ [name and job description]; or

☐ I am the plaintiff or an attorney of record for the plaintiff in a lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

☐ I am the plaintiff or attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgment and received the attached notice and acknowledgment form within twenty days after the date of mailing.

☐ Other [specify]:______________________________________________

______________________________________________

☐ I was unable to execute service because:

______________________________________________

______________________________________________

______________________________________________

My fee is $__________.

**To be completed if service is by a sheriff or deputy sheriff:**

Date:_______________

SHERIFF OF _____________ COUNTY, ARKANSAS

By:______________________________
[signature of server]

______________________________
[print name, title & badge no.]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date:_______________

By: [signature]
[signature of server]

RAYMOND FRAGIER
[printed name]

Address: P O BOX 1006
LITTLE ROCK
AR

Phone: 501-413-1173

18-09751
usc.frm

Subscribed and sworn to before me this date:______________

______________________
Notary Public

My Commission Expires:

__________________

Additional information regarding service or attempted service:

______________________________________________________________________
______________________________________________________________________
______________________________________________________________________
______________________________________________________________________
________________________________________________

Filed in District Court of
Faulkner County
4/1/19 , D. C.

IN THE DISTRICT COURT OF FAULKNER COUNTY, ARKANSAS
CONWAY DIVISION

PORTFOLIO RECOVERY ASSOCIATES, LLC PLAINTIFF

V. CASE NO. CWCV-19-453

SARAH PIERCE DEFENDANT

COMPLAINT-ACCOUNT STATED

Comes the Plaintiff and for its cause of action against the Defendant, states:

1. That the Plaintiff is a foreign limited liability company authorized to bring this action under Ark. Code Ann. §4-32-1008.

2. That the Defendant is a resident of Faulkner County, Arkansas.

3. Jurisdiction and venue are proper in this Court.

4. That Defendant purchased certain items with extensions of credit obtained on his/her COMENITY CAPITAL BANK account. Plaintiff and Defendant continued to transact over a period of time. Defendant received statements reflecting charges made on said credit account. See Exhibit A attached hereto and incorporated word for word.

5. That Defendant did not object to any of said statements and therefore has assented to the accuracy of the statements and the balance, express or implied

6. That the amount due on the stated account is as follows, $3,605.96. Please see Plaintiff's Affidavit which is attached hereto and incorporated word for word.

7. That demand has been made for the payment of the stated account, yet the balance remains unpaid.

WHEREFORE, Plaintiff prays for Judgment against the Defendant in the amount of $3,605.96, for all costs herein paid and expended, and for all other proper relief.

Allen & Withrow
Attorneys at Law
P.O. Box 17248
Little Rock, AR 72222
(501) 227-2000

18-09751
ast.frm

Lori Withrow (98069)
Gary J Barrett (2000071)

**AFFIDAVIT**

State of Texas
County of Tarrant ss.

I, the undersigned, Aleia Bellot, Custodian of Records, for Portfolio Recovery Associates, LLC hereby depose, affirm and state as follows:

1. I am competent to testify to the matters contained herein.

2. I am an authorized employee of Portfolio Recovery Associates, LLC, ("Account Assignee") which is doing business at Riverside Commerce Center, 120 Corporate Boulevard, Norfolk, Virginia, and I am authorized to make the statements, representations and averments herein, and do so based upon a review of the business records of the Original Creditor COMENITY CAPITAL BANK/IDEAL IMAGE and those records transferred to Account Assignee from COMENITY CAPITAL BANK ("Account Seller"), which have become a part of and have integrated into Account Assignee's business records, in the ordinary course of business.

3. According to the business records, which are maintained in the ordinary course of business, the account, and all proceeds of the account are now owned by the Account Assignee, all of the Account Seller's interest in such account having been sold, assigned and transferred by the Account Seller on 5/30/2018. Further, the Account Assignee has been assigned all of the Account Seller's power and authority to do and perform all acts necessary for the settlement, satisfaction, compromise, collection or adjustment of said account, and the Account Seller has retained no further interest in said account or the proceeds thereof, for any purpose whatsoever.

4. According to the records transferred to the Account Assignee from Account Seller, and maintained in the ordinary course of business by the Account Assignee, there was due and payable from SARAH PIERCE ("Debtor and Co-Debtor") to the Account Seller the sum of $3,605.96 with the respect to account number ending in 8813 as of the date of 1/12/2018 with there being no known un-credited payments, counterclaims or offsets against the said debt as of the date of the sale.

5. According to the account records of said Account Assignee, after all known payments, counterclaims, and/or setoffs occurring subsequent to the date of sale, Account Assignee claims the sum of $3,605.96 as due and owing as of the date of this affidavit.

6. Plaintiff believes that the defendant is not a minor or an incompetent individual, and declares that the Defendant is not on active military service of the United States.

Portfolio Recovery Associates, LLC

By: Aleia Bellot, Custodian of Records

Subscribed and sworn to before me on JAN 24 2019

Notary Public

TAMMY HARRIS
Notary Public, State of Texas
Comm. Expires 07-11-2021
Notary ID 131203748

This communication is from a debt collector and is an attempt to collect a debt. Any information obtained will be used for that purpose.

v1

18-09751



PAGE 1 OF 4

**Summary of account activity**

| | |
|---|---|
| Account no. | 6813 |
| Previous balance | $3,542.00 |
| Payments | 0.00 |
| Other credits | 0.00 |
| Purchases | 0.00 |
| Other debits | 0.00 |
| Fees charged | 37.00 |
| Interest charged | 25.86 |
| New balance | $3,605.86 |
| Past due amount | $47.00 |
| Credit limit | $0.00 |
| Available credit | $0.00 |
| Statement closing date | 01/12/2018 |
| Days in billing cycle | 31 |

**Payment information**

| | |
|---|---|
| New balance | $3,605.86 |
| Minimum payment due | $1,191.00 |
| Payment due date | 02/07/2018 |

**Late payment warning:** If we do not receive your minimum payment by 02/07/2018 you may have to pay up to a $37.00 late fee.

**Minimum payment warning:** If you make only the minimum payment for each period, you will pay more in interest and it will take you longer to pay off your balance. For example:

| If you make no additional charges using this card and each month you pay: | You will pay off the balance shown on the statement in about: | And you will end up paying an estimated total of: |
|---|---|---|
| Only the minimum payment | 11 years | $6085 |

For information regarding credit counseling services, call 1-800-584-1708.

Promotional Plan(s) EXPIRING SOON!

**IMPORTANT NOTICES**

| | | |
|---|---|---|
| Promotional plans(s) EXPIRING SOON! See the "Details of your plans" section that follows for details | | |

**Transactions**

| TRANS DATE | TRANSACTION DESCRIPTION/LOCATION | AMOUNT |
|---|---|---|
| 01/12/2018 | PROMOTIONAL TO REVOLVING | 2,470.50 |
| **Fees** | | |
| 01/07/2018 | LATE FEE | 37.00 |
| | Total fees charged for this period | $37.00 |
| **Interest charged** | | |
| | Interest charge on purchases | $25.86 |
| | Total interest for this period | $25.86 |

| 2018 totals year to date | |
|---|---|
| Total fees charged in 2018 | $37.00 |
| Total interest charged in 2018 | $25.86 |

NOTICE: See reverse side for important information.

Please fold on perforation above.

IDEAL IMAGE

| Account number | 6813 |
|---|---|
| New balance | Minimum payment |
| $3,605.86 | $1,191.00 |

584

☐ Yes, I have moved or updated my e-mail address - see reverse.

Amount enclosed: Payment must reach us by 5 pm ET on 02/07/2018.

$

Please make check payable to: COMENITY - IDEAL IMAGE

SARAH PIERCE
170 SHENANDOAH DR
CONWAY AR 72032-8793

Please return this portion along with your payment to:
PO BOX 659622
SAN ANTONIO TX 78265-9622

Keep this portion for your records.

**What To Do If You Think You Find A Mistake On Your Statement**

If you think there is an error on your statement, write to us at: Comenity Capital Bank PO Box [illegible], Columbus, Ohio [illegible].

In your letter give us the following information:

- Account information: Your name and account number.
- Dollar amount: The dollar amount of the suspected error.
- Description of Problem: If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us within 60 days after the error appeared on your statement.

You must notify us of any potential errors in writing. You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

While we investigate whether or not there has been an error, the following are true:

- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

**Your Rights If You Are Dissatisfied With Your Credit Card Purchases**

If you are dissatisfied with the goods or services that you have purchased with your credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the purchase.

To use this right, all of the following must be true:

1. The purchase must have been made in your home state or within 100 miles of your current mailing address, and the purchase price must have been more than $50. (Note: Neither of these is necessary if your purchase was based on an advertisement we mailed to you, or if we own the company that sold you the goods or services.)

2. You must have used your credit card for the purchase. Purchases made with cash advances from an ATM or with a check that accesses your credit card account do not qualify.

3. You must not yet have fully paid for the purchase.

If all of the criteria above are met and you are still dissatisfied with the purchase, contact us in writing at: Comenity Capital Bank PO Box [illegible], Columbus, Ohio [illegible].

While we investigate, the same rules apply to the disputed amount as discussed above. After we finish our investigation, we will tell you our decision. At that point, if we think you owe an amount and you do not pay we may report you as delinquent.

**HOW TO AVOID PAYING INTEREST.** Your due date is at least 25 days after the close of each billing cycle. We will not charge you interest on purchases if you pay your entire balance by the due date each month. We will begin to charge interest on new purchases made under a Low APR, Equal Payment or Reduced Payment Credit Plan from the date of purchase.

**BALANCE COMPUTATION METHOD.** We calculate interest separately for each type of balance on your account using a "daily balance" to determine interest charges for each billing period. We figure the interest charge on your account by applying the periodic rate to the "daily balance" of your account for each day in the billing cycle. To get the "daily balance" we take the beginning balance of your account each day, add any new purchases and fees, and subtract any payments or credits. [illegible] as a zero balance. This gives us the daily balance.

**CREDIT REPORTING.** We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

**NOTICE OF CREDIT REPORT DISPUTES**

If you believe the account information we reported to a consumer reporting agency is inaccurate, you may submit a direct dispute to Comenity Capital Bank PO Box [illegible], Columbus, Ohio [illegible]. Your written dispute must include sufficient information to identify the account and specify why the information is inaccurate:

- Account Information: Your name and account number
- Contact Information: Your address and telephone number
- Disputed Information: Identify the account information disputed and explain why you believe it is inaccurate
- Supporting Documentation: If available, provide a copy of the section of the credit report showing the account information you are disputing.

We will investigate the disputed information and report the results to you within 30 days of receipt of the information needed for our investigation. If we find that the account information we reported is inaccurate, we will promptly provide the necessary correction to each consumer reporting agency to which we reported the information.

**PAYMENTS MARKED "PAID IN FULL".** All written communications regarding disputed amounts that include any check or other payment instrument marked with "payment in full" or similar language, must be sent to [illegible] North Loop 1604 East, Suite 101, San Antonio, TX [illegible].

**DO NOT USE THE ENCLOSED REMITTANCE ENVELOPE.**

We may accept payment sent to any other address without losing any of our rights.

No payment shall operate as an accord and satisfaction without prior written approval.

**CUSTOMER SERVICE.** Visit comenity.net[illegible] or call 1 [illegible] (TDD/TTY 1 [illegible]).

**TELEPHONE MONITORING.** To provide you with high quality service, phone communication with us is recorded and/or monitored.

**ADDITIONAL INFORMATION.** The following designations, when appearing on the front of your statement, mean the following: [illegible]. If you have a variable rate account, your periodic rates may vary. You may pay all of your Account balance at any time without penalty.

Send all inquiries to: CUSTOMER SERVICE, PO Box [illegible], Columbus, Ohio [illegible].

Send all bankruptcy notices and related correspondence to: Comenity Capital Bank, Bankruptcy Department, PO Box [illegible], Columbus, Ohio [illegible].

**NOTICE ABOUT ELECTRONIC CHECK CONVERSION.** When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day we receive your payment, and you will not receive your check back from your financial institution.

**PAYMENTS.** Pay your Account by the payment due date by the time listed below. If we do not receive your payment in a correct format (outlined below) it may not be credited to your Account for up to five days, or may be rejected. Also, your payment must reach us by the payment cutoff time that applies to the payment method you select.

Correct Format. Correct format for different payment methods include:

Mailing or Overnight: Send a personal check, money order, traveler's check or cashier's check payable in U.S. dollars, to the name and address shown on this Statement in the amount of [illegible]. [illegible] send your payment with one payment stub and do not send any correspondence with your payment. [illegible] North Loop 1604 East, Suite 101, San Antonio, TX [illegible] [illegible] "Paid In Full" section above. [illegible] Pay By Phone: You can call us toll free at 1 [illegible] (TDD/TTY 1 [illegible]) to make a payment by telephone, which may include a fee. Online: You can make a payment online at comenity.net[illegible].

Payment Cutoff Times. Payment cutoff times/deadlines for us to receive payments are by the due date on this Statement in the payment stub area at the following times: Mailing and Overnight: By 5:00 pm Eastern Time (E.T.); Pay By Phone: By [illegible] pm Eastern Time (E.T.); Online: By [illegible] pm (E.T.).

**New Information**

Title (optional) ________ First Name ______________________________ MI ________

Last Name ______________________________ Soc. Sec. No. ____________

Street Address __________________________________________

Apt. No. ____________ RR ____________ PO Box ____________

City ____________ State ________ Zip Code ________ Foreign Map Code ________

Home Phone ______________________ Work Phone ______________________

Email Address __________________________________________

## Interest charge calculation

Your Annual Percentage Rate (APR) is the annual interest rate on your account. See BALANCE COMPUTATION METHOD on page 2 for more details.

| TYPE OF BALANCE | APR | BALANCE SUBJECT TO INTEREST RATE | INTEREST CHARGE |
|---|---|---|---|
| Purchases | 27.9900% (v) | 1,092.00 | 25.96 |
| Plan 419-00001 DF UNTPY BQ | 27.9900% (v) | 0.00 | 0.00 |

## Details of your plans

419-00001 There is no payment due on this plan option at this time. If you would like help determining the amount to pay to avoid finance charges on any regular purchases and Zero Interest Payment Plans, please contact us at the Customer Care phone number on this statement or the back of your credit card.

| ORIGINAL PURCHASE AMOUNT | ORIGINAL PURCHASE DATE | PLAN EXPIRES | PREVIOUS PLAN BALANCE | PURCHASES & CHARGES | PAYMENTS & CREDITS | NEW PLAN BALANCE | ACCRUED INTEREST THIS PERIOD | TOTAL ACCRUED INTEREST |
|---|---|---|---|---|---|---|---|---|
| 2,910.00 | 03/01/2016 | 03/05/2018 | 2,470.60 | 0.00 | 2,470.60 | 0.00 | 0.00 | 0.00 |

## Additional important messages

YOUR ACCOUNT HAS BEEN CHARGED OFF – your ENTIRE BALANCE is due at this time.
Your account is now reported as bad debt and is being handled by our Recovery team. A Recovery Specialist is reviewing your account to determine the appropriate steps, as permitted and available under applicable law, to protect our interests. This may involve sending your account to a third party, which may include our legal vendor. Our goal is to avoid these steps. To do so, you must discuss your account with us so that we can reach an agreement for a payment arrangement and resolve the unpaid balance. Let's handle this together at 1-800-695-7444.

Your credit card account is closed. A monthly billing statement will be sent until the balance is paid in full. You do not have any available credit due to your account being closed.

Consumers are entitled to one free credit report per year. To request yours call 1-877-322-8228 or visit annualcreditreport.com



PAGE 4 OF 4



PAGE 1 OF 4

**Summary of account**

| | |
|---|---|
| Account no. | [illegible]-9813 |
| Previous balance | $3,[illegible].40 |
| Payments | -122.00 |
| Other credits | 0.00 |
| Purchases | 0.00 |
| Other debits | 0.00 |
| Fees charged | 0.00 |
| Interest charged | 267.81 |
| New balance | $3,178.41 |
| Past due amount | 0.00 |
| Credit limit | $4,100.00 |
| Available credit | $920.59 |
| Statement closing date | 05/12/2017 |
| Days in billing cycle | 31 |

**Payment information**

| | |
|---|---|
| New balance | $3,178.41 |
| Minimum payment due | $128.00 |
| Payment due date | 06/07/2017 |

**Late payment warning:** If we do not receive your minimum payment by 06/07/2017 you may have to pay up to a $37.00 late fee.

**Minimum payment warning:** If you make only the minimum payment for each period, you will pay more in interest and it will take you longer to pay off your balance. For example:

| If you make no additional charges using this card and each month you pay: | You will pay off the balance shown on the statement in about: | And you will end up paying an estimated total of: |
|---|---|---|
| Only the minimum payment | 12 years | $8175 |
| $148 | 3 years | $5315 (savings $2860) |

For information regarding credit counseling services, call 1-800-284-1708.

You must pay the balance $2,470.80 of your Plan 418-00001 in full before Mar 05, 2018 to avoid paying accrued interest charges.

Account Questions! Need to make a payment? Want to know how to go paperless? Visit www.comenity.net/idealimage or call 1-866-490-9888 (TDD/TTY 1-888-819-1918). Want to stay in the know with credit tips and news? Visit us at facebook.com/askcomenity or at twitter.com/askcomenity.

**Transactions**

| TRANS DATE | TRANSACTION DESCRIPTION/LOCATION | AMOUNT |
|---|---|---|
| 04/12/2017 | PROMO FINANCE CHARGE ADJ | 267.81 |
| 05/05/2017 | PAYMENT-THANK YOU | -122.00 |
| 05/12/2017 | PROMOTIONAL TO REVOLVING | 441.00 |

**Fees**

| | |
|---|---|
| Total fees charged for this period | $0.00 |

**Interest charged**

| | |
|---|---|
| Interest charge on purchases | $267.81 |
| Total interest for this period | $267.81 |

| 2017 totals year to date | |
|---|---|
| Total fees charged in 2017 | $37.00 |
| Total interest charged in 2017 | $267.81 |

NOTICE: See reverse side for important information.

IMAGE

| Account number | 813 |
|---|---|
| New balance | Minimum payment |
| $3,178.41 | $128.00 |

993

☐ Yes, I have moved or updated my e-mail address - see reverse.

Amount enclosed: $ ______

Payment must reach us by 5pm ET on 06/07/2017.

Please make check payable to: COMENITY - IDEAL IMAGE

SARAH PIERCE
170 SHENANDOAH DR
CONWAY AR 72032-6759

Please return this portion along with your payment to:
PO BOX 659622
SAN ANTONIO TX 78265-9622

Keep this portion for your records.

**What To Do If You Think You Find A Mistake On Your Statement**

If you think there is an error on your statement, write to us at: Comenity Capital Bank, PO Box [illegible], Columbus, Ohio [illegible].

In your letter, give us the following information:

- Account information: Your name and account number.
- Dollar amount: The dollar amount of the suspected error.
- Description of Problem: If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us within 60 days after the error appeared on your statement.

You must notify us of any potential errors in writing. You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

While we investigate whether or not there has been an error, the following are true:

- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

***Your Rights If You Are Dissatisfied With Your Credit Card Purchases***

If you are dissatisfied with the goods or services that you have purchased with your credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the purchase.

To use this right, all of the following must be true:

1. The purchase must have been made in your home state or within 100 miles of your current mailing address, and the purchase price must have been more than $50. (Note: Neither of these is necessary if your purchase was based on an advertisement we mailed to you, or if we own the company that sold you the goods or services.)

2. You must have used your credit card for the purchase. Purchases made with cash advances from an ATM or with a check that accesses your credit card account do not qualify.

3. You must not yet have fully paid for the purchase.

If all of the criteria above are met and you are still dissatisfied with the purchase, contact us in writing at: Comenity Capital Bank, PO Box [illegible], Columbus, Ohio [illegible].

While we investigate, the same rules apply to the disputed amount as discussed above. After we finish our investigation, we will tell you our decision. At that point, if we think you owe an amount and you do not pay we may report you as delinquent.

**HOW TO AVOID PAYING INTEREST.** Your due date is at least 25 days after the close of each billing cycle. We will not charge you interest on purchases if you pay your entire balance by the due date each month. We will begin to charge interest on new purchases made under a Low APR, Equal Payment or Budget Payment [illegible] from the date of purchase.

**BALANCE COMPUTATION METHOD.** We calculate interest separately for each type of balance on your account using a "Daily Balance" to calculate interest charges for each billing period. We figure the interest charge on your account by applying the periodic rate to the "daily balance" of your account for each day in the billing cycle. To get the "daily balance" we take the beginning balance of your account each day, add any new purchases and fees, and subtract any payments or credits (treating any net credit balance as a zero balance). This gives us the daily balance.

**CREDIT REPORTING.** We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

**NOTICE OF CREDIT REPORT DISPUTES**

If you believe the account information we reported to a consumer reporting agency is inaccurate, you may submit a direct dispute to Comenity Capital Bank PO Box [illegible], Columbus, Ohio [illegible]. Your written dispute must provide sufficient information to identify the account and specify why the information is inaccurate:

- Account Information: Your name and account number
- Contact Information: Your address and telephone number
- Disputed Information: Identify the account information disputed and explain why you believe it is inaccurate
- Supporting Documentation: If available, provide a copy of the section of the credit report showing the account information you are disputing.

We will investigate the disputed information and report the results to you within 30 days of receipt of the information needed for our investigation. If we find that the account information we reported is inaccurate, we will promptly transmit the necessary corrections to each consumer reporting agency to which we reported the information.

**PAYMENTS MARKED "PAID IN FULL".** All written communications regarding disputed amounts that include any check or other payment instrument marked with "payment in full" or similar language, must be sent to: [illegible] North Loop 1604 East, Suite 101, San Antonio, TX [illegible].

**DO NOT USE THE ENCLOSED REMITTANCE ENVELOPE.**

- We may accept payment sent to any other address without losing any of our rights.
- No payment shall operate as an accord and satisfaction without prior written approval.

**CUSTOMER SERVICE.** Visit [illegible] or call [illegible].

**TELEPHONE MONITORING.** To provide you with high quality service, phone communication with us is monitored and/or recorded.

**ADDITIONAL INFORMATION.** The following designations, when appearing on the front of your statement, mean the following: [illegible] If you have a variable rate account, your periodic rates may vary. You may pay all of your Account balance at any time without penalty.

Send all inquiries to: CUSTOMER SERVICE, PO Box [illegible], Columbus, Ohio [illegible].

Send all bankruptcy notices and related correspondence to: Comenity Capital Bank, Bankruptcy Department, PO Box [illegible], Columbus, Ohio [illegible].

**NOTICE ABOUT ELECTRONIC CHECK CONVERSION.** When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day we receive your payment, and you will not receive your check back from your financial institution.

**PAYMENTS.** Pay your Account by the payment due date by the time listed below. If we do not receive your payment in a correct format as outlined below it may not be credited to your Account for up to five days, or may be rejected. Also, your payment must reach us by the payment cutoff time that applies to the payment method you select.

**Correct Format.** Correct format for different payment methods include:

*Mailing or Overnight:* Send a personal check, money order, traveler's check or cashier's check payable in U.S. dollars, to the name and address shown on this Statement in the payment stub area enclosing your full name and minimum or desired amount. Be sure to include your payment stub, do not staple or clip your payment to the stub. Include your account number on your check, use the envelope provided with your Statement, send one payment with one payment stub and do not send any correspondence with your payment. You should overnight a payment to [illegible] North Loop 1604 East, Suite 101, San Antonio, TX [illegible] and the additional format requirements are the same as other mailed payments unless there is a dispute, in which case you follow the Payments Marked "Paid in Full" section above. Do not send cash or gift certificates. *Pay By Phone:* You can call us toll free at [illegible] to make a payment by telephone, which may include a fee. *Online:* You can make a payment online at [illegible].

*Payment Cutoff Times.* Payment cutoff times that apply for us to receive payments are by the due date on this Statement in the payment stub area at the following times: *Mailing and Overnight:* By 5:00 pm Eastern Time (E.T.); *Pay By Phone:* By [illegible] pm Eastern Time (E.T.); *Online:* By [illegible] pm E.T.

New Information

Title (optional) ________ First Name ______________________________ MI ________

Last Name ______________________________ Soc. Sec. No. ________________

Street Address ____________________________________________

Apt. No. ____________ RR ____________ PO Box ____________

City ____________ State ________ Zip Code ________ Foreign Map Code ________

Home Phone ________________ Work Phone ________________

Email Address ____________________________________________

**[illegible]**

Your Annual Percentage Rate (APR) is the annual interest rate on your account. See BALANCE COMPUTATION METHOD on page 2 for more details.

| TYPE OF BALANCE | APR | BALANCE SUBJECT TO INTEREST RATE | INTEREST CHARGE |
|---|---|---|---|
| Purchases | 27.7400% (v) | 0.00 | 0.00 |
| Plan 412-00001 DF INT PY RQ | 27.7400% (v) | 448.14 | 287.81 |
| Plan 418-00001 DF INT PY RQ | 27.7400% (v) | 2,578.50 | 0.00 |

**[illegible]**

412-00001 | Promotional Transactions have ended during this billing period. These transactions are now included in your current balance and minimum payment due.

| ORIGINAL PURCHASE AMOUNT | ORIGINAL PURCHASE DATE | PLAN EXPIRES | PREVIOUS PLAN BALANCE | PURCHASES & CHARGES | PAYMENTS & CREDITS | NON PLAN BALANCE | ACCRUED INTEREST THIS PERIOD | TOTAL ACCRUED INTEREST |
|---|---|---|---|---|---|---|---|---|
| 1,274.00 | 04/18/2016 | 04/17/2017 | 480.00 | 287.81 | 727.81 | 0.00 | 0.00 | 0.00 |

418-00001 | You must pay your promotional balance of $2,470.60 in full by 03/05/2018 to avoid paying accrued interest charges.

| ORIGINAL PURCHASE AMOUNT | ORIGINAL PURCHASE DATE | PLAN EXPIRES | PREVIOUS PLAN BALANCE | PURCHASES & CHARGES | PAYMENTS & CREDITS | NEW PLAN BALANCE | ACCRUED INTEREST THIS PERIOD | TOTAL ACCRUED INTEREST |
|---|---|---|---|---|---|---|---|---|
| 2,910.63 | 03/01/2016 | 03/05/2018 | 2,573.60 | 0.00 | 103.00 | 2,470.60 | 60.70 | $98.40 |

**[illegible]**

**REMINDER:** To avoid interest on the Regular Revolving Credit Plan, pay your entire balance by the Payment Due Date each month.

**IMPORTANT NOTICE – READ AND KEEP FOR YOUR RECORDS:** We are amending your Credit Card Account Agreement effective immediately to further explain the Grace Period. Replace the first two bullets in the Interest Charges part of "Section D. Interest, fees and charges" (possibly called "Finance Charges") with the following:

Interest Charges

- Interest charges begin on a transaction, fee or interest from the day added to the daily balance and continue until the balance is paid in full.
- There is a Grace Period on Regular Revolving Credit Plan purchases. This means we will not charge interest on such purchases if you pay in full each billing period.
- We will not charge interest on any portion of a payment allocated to the Regular Revolving Credit Plan that is paid within an applicable Grace Period.

How can you take charge against ID Theft? Visit idtheft.gov to find out.

**You shop. They shop. Everyone wins!**

**Add your family or friends to your account to make shopping even easier.**

**Add someone today! It's easy, just**

1. Visit www.comenity.net/idealimage and log in to your account
2. Click on *My Profile*
3. Select Manage Authorized Buyers under the Profile tab